UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Woodbury Lodging LLC *doing business as* Norwood Inn & Suites,<br><br>Plaintiff,<br><br>v.<br><br>Integrity Mutual Insurance Company,<br><br>Defendant. | Case No. 20-cv-1015 (SRN/DTS)<br><br><br>**MEMORANDUM, OPINION, AND ORDER** |

Kenneth U. Udoibok, Kenneth Ubong Udoibok, P.A., The Flour Exchange, Suite 5010, 310 Fourth Avenue South, Minneapolis, MN 55415, for Plaintiff.

Dawn L. Gagne and Patrick H. Elliott, Elliott Law Offices, P.A., 2409 West 66th Street, Minneapolis, MN 55423, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on the Motion for Summary Judgment and to Exclude Expert Testimony [Doc. No. 14] filed by Defendant Integrity Mutual Insurance Company ("Integrity"). Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** in part and **DENIES** in part the motion.

I.     **BACKGROUND**

    A.     **Factual Background**

This dispute arises from property damage allegedly caused by hailstorms and ice dams. Plaintiff Woodbury Lodging LLC ("Woodbury Lodging") owns and operates hotel

1

properties. (First Decl. of Kenneth Udoibok [Doc. No. 28] ("First Udoibok Decl.") Ex. 1 ("Pooniwala Dep.") 8:11–15.) The alleged damage occurred at one of those properties, Norwood Inn & Suites, which is located in Worthington, Minnesota ("Worthington Hotel"). (*See id.* at 9:2–5; 17:21–20:3.)

### 1. The Worthington Hotel

Woodbury Lodging acquired the Worthington Hotel in May 2017. (*Id.* at 9:2–5.) As part of that purchase, the property was appraised on April 4, 2017. (Decl. of Troy Brown [Doc. No. 31] ("Brown Decl.") Ex. 4 at 4–167; *see id.* at 88:21–25.) The appraisal simply described the roof of the Worthington Hotel as "[f]lat" with a "rubber membrane roof covering." (Troy Decl. Ex. 4 at 56.) It described the Worthington Hotel's condition as "Average/Good for Age" and estimated a remaining economic life of thirty years. (*Id.* at 56–57.) The appraisal did not mention hail damage or a leaky roof. (*See* Pooniwala Dep. at 88:17–20.)

### 2. The Policy

Integrity issued a Commercial Business Owners Policy to Woodbury Lodging, for the policy period May 18, 2017 through May 18, 2018, which the parties extended through May 18, 2019. (First Udoibok Decl. Ex. 2; Decl. of Dawn L. Gagne [Doc No. 18] ("Gagne Decl.") Ex. 17 at 1.)[1]

---

[1] Defendant submitted excerpts of the policy for the period of May 18, 2018 through May 18, 2019, while Plaintiff submitted the entire policy for the period of May 18, 2017 through May 18, 2018. Neither party asserts that these policies are materially different for the purposes of this lawsuit. Accordingly, the Court generally refers to the "Policy," citing to Defendant's exhibit containing the entirety of the agreement.

The Policy generally insures against "direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss." (Policy § I.A.) "Covered Property" includes "[b]uildings, meaning the buildings and structures at the premises." (*Id.* § I.A.1.a.) "Covered Causes of Loss" are all "risks of direct physical loss," including property damage caused by "hail," "windstorm," "weight of snow, ice or sleet," or "water damage," unless an exclusion applies. (*Id.* §§ I.A.3, I.H.12.)

The Policy contains several exclusions. (*Id.* § I.B.) Relevant here, Integrity excludes coverage when an insured neglects "to use all reasonable means to save and preserve property from further damage at and after the time of loss." (*Id.* § I.B.2.k.) Damage due to "[w]ear and tear" is also excluded. (*Id.* § I.B.2.l(1).) The Policy further excludes coverage for damage from "weather conditions" and "negligent work," unless the damage results from a Covered Cause of Loss. (*Id.* § I.B.3.a, .c.)

### 3. The Leaky Roof

In July 2018, the roof of the Worthington Hotel began to leak. (Pooniwala Dep. 18:2–4, 20:1–6.) To fix the leaks, Woodbury Lodging entered an agreement with a company called Ultimate Restoration to repair the roof and to handle the insurance claim. (*Id.* at 27:2–13.) However, because Ultimate Restoration was expensive, they agreed to hire someone else to make initial repairs to the roof. (*Id.* at 25:1–3; *see also* 21:14–24.) But those repairs failed and thus Ultimate Restoration attempted to fix the roof. (*Id.* at 23:3–6.) Their efforts failed as well. (*Id.* at 23:6–7.)

The leaky roof became such an issue that customers repeatedly complained and state inspectors threatened to shut down the hotel. (*Id.* at 23:8–16.) In fact, the Worthington

Hotel was forced to shut down the pool area for more than 12 months. (*Id.* at 46:12–18.) In another effort to fix the issues, Woodbury Lodging hired a different company throughout the winter of 2018 and the spring of 2019. (*Id.* at 29:23–31:13.) That company sent a crew of five or six people on several occasions to try to repair the roof. (*Id.* at 32:22–33:25.) Despite these efforts, the roof continued to leak. (*See* 29:23–30:1; 33:12–15.)

### a. The First Insurance Claim

On May 3, 2019, Woodbury Lodging entered into a contract with Troy Brown at DTL Global, Inc. to help process insurance claims with Integrity relating to the roof. (Gagne Decl. Ex. 3; Pooniwala Dep. 135:8–18.) Mr. Brown declares that he called Integrity and submitted an insurance claim, alleging that the Worthington Hotel suffered damage from winter weather. (Brown Decl. ¶ 15, Ex. 14.) Mr. Brown further declares that he alleged losses due to weather events that occurred in early and mid-April but agreed to record a *reported* loss date of April 23, 2019. (*Id.* ¶ 15.) In response, each party selected claims adjusters, who jointly inspected the roof on May 13, 2019. (Decl. of Sean Brovold [Doc. No. 37] ¶ 4.) Integrity also hired Roofing Consultants, Ltd. ("RCL") to inspect the roof. (Gagne Decl. Ex. 2 ("First RCL Report") at 1.)

After inspecting the property, RCL opined that the cause of the water intrusion was "due to age, wear and long-term deterioration." (*Id.* at 5.) Contrary to the insurance claim, RCL found no evidence of damage resulting from extreme weather. (*Id.*) Integrity subsequently denied the claim. (Gagne Decl. Ex. 18.) In a series of e-mail communications, Mr. Brown challenged that denial. (*See generally* Brown Decl. Exs. 6, 10.)

4

### b. The Second Insurance Claim

While challenging the denial of the first claim, Mr. Brown submitted a second claim on behalf of Woodbury Lodging on August 5, 2019. (Gagne Decl. Ex. 6.) This claim alleged damage to the roof due to "windstorm or hail" at the Worthington Hotel with a claim of loss date of July 4, 2018. (*Id.* at 3.)

Integrity hired Richard Herzog from Haag Engineering to investigate the second claim. (*See* Gagne Decl. Ex. 11 ("Haag Report") at 2.) Herzog inspected the property on September 13, 2019, and issued a report on October 23, 2019. (*Id.*) Herzog observed hail damage on the roof. (*Id.* at 9, 13.) However, after reviewing the meteorological data, he concluded that the hail damage "had not occurred on or about July 4, 2018," but rather "occurred during one or more hailstorm events between 2009 and 2015." (*Id.* at 13.) Based on that report, Integrity again denied coverage. (Gagne Decl. Ex. 19.)

### B. Procedural Background

Plaintiff filed this lawsuit in Minnesota state court in April 2020, seeking declaratory relief, and alleging claims for breach of contract and unjust enrichment. (*See generally* Compl. [Doc. No. 1-1].) Defendant properly removed the case to federal district court on April 27, 2020. (Notice of Removal [Doc. No. 1].)

During discovery, the Plaintiff retained two experts. One expert is Meteorologist Steven Clark who produced an expert report on January 21, 2021. (Third Decl. of Kenneth Udoibok [Doc. No. 30] ("Third Udoibok Decl.") Ex. 2 ("Clark Report"). The other expert is Professional Engineer Brian Johnson, who produced two reports, one report for each of

5

the insurance claims. (Second Decl. of Kenneth Udoibok [Doc. No. 29] Ex. 1 ("Second Johnson Report"), Ex. 2 ("First Johnson Report").)

In response, Integrity hired RCL to produce a rebuttal report to the First Johnson Report. (Gagne Decl. Ex. 16 ("Second RCL Report") at 1.) RCL opined that Mr. Johnson's opinion was "not supported by any actual evidence," and reaffirmed its opinion that the damage was a "result of the roof long surpassing its functional useful life combined with the lack of permanent repair efforts in response to ongoing water infiltration." (*Id.* at 6.)

On October 1, 2021, Integrity filed this motion for summary judgment and to exclude the expert testimonies of Mr. Clark and Mr. Johnson.

**II.    DISCUSSION**

    **A.    Motion to Exclude Expert Testimony**

        **1.    Legal Standard**

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted. *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir.

2001). "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact." *Id.* "Second, the proposed witness must be qualified to assist the finder of fact." *Id.* "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id.* (internal quotation marks and citation omitted).

These requirements reflect the Supreme Court's analysis in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, in which the Court emphasized the district court's gatekeeping obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable." 509 U.S. 579, 589 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999) (extending *Daubert* to technical and other specialized expert testimony). Under *Daubert*, the cornerstone for admissibility is assistance to the trier of fact. *See Larson v. Kempker*, 414 F.3d 936, 940–41 (8th Cir. 2005).

Under this standard, proponents must demonstrate by a preponderance of evidence that the expert's opinion is reliable. *Lauzon*, 270 F.3d at 686. Courts generally support "an attempt to liberalize the rules governing the admission of expert testimony," and favor admissibility over exclusion. *See id.* (internal quotation marks and citation omitted). Doubts regarding the usefulness of an expert's testimony should be resolved in favor of admissibility, *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011), and gaps in an expert witness's qualifications or knowledge generally go to the weight of the testimony and not its admissibility, *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006).

### 2. Integrity's Motion to Exclude Expert Testimony

Defendant moves to exclude the expert opinions of Mr. Clark and Mr. Johnson. The Court considers each expert in turn.

#### a. Steven Clark, Meteorologist

##### (i) Qualifications and Opinion

Mr. Clark is a meteorologist and has been a member of the American Meteorological Society since he earned a Bachelor of Science in Meteorology in 1986. (Clark Report at 8, 10.) He also obtained a degree in Applied Hydrology in 1990. (*Id.*) He owns his own business, Clark Consulting, and has consulted about, testified on, and analyzed data regarding weather conditions including damage caused by wind and hailstorms. (*Id.*)

Mr. Clark has provided three opinions in this case. First, he opines that 1-inch diameter hail hit the covered property on June 27, 2017. (*Id.* at 8.) Second, he opines that "[o]n July 4, 2018, the first date of loss, small hail most likely fell at the property." (*Id.*) Third, he opines that there was ice damming on the roof during the first half of March in 2019. (*Id.*)

In reaching these opinions, Mr. Clark reviewed data from the National Centers for Environmental Information, including radar images. (*Id.* at 1.) He also reviewed surface weather and rain gauge data from the Worthington Airport, along with two storm reports for Nobles County. (*Id.*) He furthered reviewed weather data from a cooperative weather station. (*Id.* at 7.) Mr. Clark has declared that these sources are "usually and customarily relied upon by meteorologists." (Third Udoibok Decl. Ex. 1 ("Clark Decl.") at 2.)

### (ii) Objections and Analysis

Defendant contends that these opinions are speculative because they do not establish that hail, wind, or any other weather damage occurred at the covered property on either claim of loss date. (Def.'s Mem. [Doc. No. 16] at 20–22.) Defendant also asserts that Mr. Clark's second opinion is not substantiated by any data and is thus speculative. (*Id.* at 22.)

Expert testimony must have factual foundation. Fed. R. Evid. 702. " 'As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility.' " *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001) (quoting *Hose v. Chi. Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995)). A district court should exclude expert opinion only when it "is so fundamentally unsupported that it can offer no assistance to the jury." *Id.* at 929–30 (internal quotation marks omitted).

Here, the Court declines to exclude Mr. Clark's opinions. He possesses the requisite expertise, his opinions explain his methodology, and he confirms that his methods are commonly accepted by meteorologists. The Court finds that data regarding weather events leading up to the loss dates, including freeze-thaw conditions and hail, are relevant and helpful to the trier of fact. Although Defendant raises objections to these opinions, those objections go to the weight of the evidence, not their admissibility. Counsel for the defense will have a full opportunity to cross-examine Mr. Clark at trial. *See Lauzon*, 270 F.3d at 694 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (internal quotation marks omitted)); *see also Gannon Int'l, LTD., v. Lexington Ins. Co.*, No. 4:07-cv-31 (CAS), 2008 WL 3244025, at *5 (E.D. Mo.

Aug. 6, 2008) (permitting expert testimony that had "some factual basis to remove it from the realm of speculation"); *In re Matter of Complaint of Atl. Marine Prop. Holding Co., Inc.*, 570 F. Supp. 2d 1363, 1368–69 (S.D. Ala. 2008) (denying motion to exclude meteorologist when the expert relied on Doppler Radar data and gave opinions of what was "likely" given that data); *Auto Owners Ins. Co. v. Blair Leasing, LLC*, No. 1:19 CV 66 ACL, 2021 WL 2778527, at *5 (E.D. Mo. July 2, 2021) (denying motion to exclude meteorologist). Accordingly, the Court denies Defendant's motion to exclude Mr. Clark's opinions.

### b. Brian Johnson, Professional Engineer
### (i) Qualifications and Opinion

Mr. Johnson holds a master's degree in civil engineering and has been a registered Professional Engineer in Minnesota since 2004. (Decl. of Brian Johnson [Doc. No. 32] ("Johnson Decl.") Ex. 1 at 1.) During that time, he has often been consulted as a forensic engineer, overseeing water intrusion investigations, and issuing causation reports. (*Id.*) In the last decade, he has been hired as an expert witness, giving both trial and deposition testimony, in over thirty cases. (*Id.* at 2–4.) He has also been retained to conduct appraisals relating to ice dam, storm, wind, and hail damage. (*Id.*)

Mr. Johnson provides two opinions in this case. First, he opines that the "winter weather of 2018-2019 overwhelmed the roof and caused it to fail," explaining that the "entry of water into the roof assembly was caused by the nature of the ice/snow/meltwater buildup that trapped itself on the roof starting on March to April 2019, and leading up to April 23, 2019." (First Johnson Report ¶¶ 2.4.18, 3.2.) Second, he opines that "it is more

10

likely than not that the observed damage is a result of the subject storm event," explaining that "there was sufficient wind and hail to cause damage to the structural elements," citing various structures with hail damage. (Second Johnson Report ¶ 6.5.) In reaching his opinions, Mr. Johnson relied on various data sources, including the Clark Report, photographs of the roof, the First RCL Report, and many other engineering resources. (*Id.* ¶¶ 1.5, 1.7, 1.11, 1.12; First Johnson Report ¶¶ 1.2, 1.4, 1.7, 1.8.)

### (ii)    Objections and Analysis

Defendant seeks to exclude Mr. Johnson's expert opinions as lacking factual foundation, contradictory, and irrelevant. (Def.'s Reply [Doc. No. 34] at 5–6.)

As explained above, challenges to "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility." *Bonner*, 259 F.3d at 929 (internal quotation marks omitted); *see also Refrigeration Supplies, Inc. v. Acadia Ins. Co.*, 507 F. Supp. 3d 1096, 1104 (E.D. Mo. 2020) ("It is up to the jury, not this Court, to weigh the credibility of these dueling experts."). Although not binding, cases involving similar motions to exclude opinions about hailstorms causing roof damage are instructive.

In *Refrigeration Supplies*, the defendant moved to exclude the opinion of plaintiff's expert, a professional engineer, regarding hail damage to a roof. 507 F. Supp. 3d at 1102. In denying the motion, the district court explained that the engineer "formed his own conclusions and opinions about whether the roof sustained hail damage after reviewing the evidence, which included a meteorological report and more than 75 photographs of the roof, and discussing it with [his employee]." *Id.* at 1103. After finding this sufficient, the

11

court further explained that the disputes were "nothing more than the classic battle of the experts." *Id.* at 1104.

Likewise, in *Bellina v. Liberty Mutual Insurance Company*, the court also denied a motion to exclude an expert's opinion that plaintiff's roof sustained hail damage. Civ. No. 19-13711, 2021 WL 1295018, at *8–9 (E.D. La Apr. 7, 2021). Notably, in that case, the expert did not consult any weather reports to confirm that a hailstorm occurred on the date of loss. *Id.* at *9. The court explained that his testimony was still admissible because the expert "explained his reasons for determining that the damage was of the type that is consistent with hail damage," and explained why "the damage was not consistent with wear and tear." *Id.* The court also noted that the expert could rely on hearsay statements that a hailstorm occurred in the area. *Id.*

The Court will not exclude Mr. Johnson's opinions. The Court finds that Mr. Johnson is qualified to offer his opinions and that, based on his knowledge, skill, experience, training, or education, has sufficiently explained the bases for his opinions. (*See generally* First Johnson Report; Second Johnson; Johnson Decl.) Moreover, as explained in *Refrigeration Supplies*, it is permissible for an engineer to form an opinion relating to hail damage based on a meteorologist report and photographs of the roof. And as in *Bellina*, Mr. Johnson clearly explains his methodology and grounds his opinions in data, citing specific hail marks on the roof. Accordingly, the Court denies Defendant's motion to exclude Mr. Johnson's opinions.

### B. Motion for Summary Judgment

#### 1. Legal Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it may affect the outcome of the lawsuit." *TCF Nat'l Bank v. Mkt. Intel., Inc.*, 812 F.3d 701, 707 (8th Cir. 2016). And a factual dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Although the moving party bears the burden of establishing the lack of a genuine issue of fact, the party opposing summary judgment may not "rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Krenik v. Cnty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995) (internal quotation marks omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Moreover, summary judgment is properly entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

### 2.     Breach of Contract

Defendant contends that Plaintiff's breach of contract claim fails as a matter of law for three reasons: (1) Plaintiff "has not produced evidence of weather events it alleges occurred on April 23, 2019, and July 4, 2018"; (2) Even if Plaintiff has produced evidence of these weather events, Plaintiff has not identified the "direct physical loss" to its property; and (3) Plaintiff has failed to establish a causal connection between the weather events and damage to the Worthington Hotel's roof.  (Def.'s Mem. at 1.)

To prevail on a breach of contract claim under Minnesota law, a plaintiff must show: "(1) formation of a contract; (2) performance by plaintiff of any conditions precedent; (3) a material breach of the contract by defendant; and (4) damages." *Gen. Mills Operations, LLC v. Five Star Custom Foods, Ltd.*, 703 F.3d 1104, 1107 (8th Cir. 2013) (internal quotation marks and citation omitted).  In Minnesota, the interpretation of an insurance policy is a question of law. *Jenoff, Inc. v. New Hampshire Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997).  Once the insured establishes coverage, it is the insurer's burden to demonstrate that an exclusion applies. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006).

Here, hail damage to the roof is clearly a covered cause of loss under the Policy. Integrity agreed to insure against "direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss."  (Policy § I.A.)  The building, including the roof, is defined as "Covered Property."  (*Id.* § I.A.1.a.)  The Policy further provides that property damage can be caused by "hail," "windstorm," "weight of snow, ice, or sleet," or "water damage."  (*Id.* §§ I.A.3,

14

I.H.12.) Accordingly, this dispute centers on whether the alleged weather events occurred, whether they caused damage to the roof, and whether certain exclusions apply that preclude coverage under the circumstances.

With respect to those issues, there are clear, material factual disputes. Primarily, the parties dispute what caused the roof to leak. Defendant contends that these issues spring from negligence, poor maintenance, and general wear and tear, while Woodbury Lodging contends it is from ice damming and hailstorms. Each side has put forth expert opinions that support their position. Accordingly, this is a case involving a classic battle of the experts.

But Defendant contends that there is no factual dispute because there is no evidence of ice dams or hailstorms causing damage to the roof on the *dates of loss*. (*See* Def.'s Mem. at 28; Def.'s Reply at 2–3.) Defendant cites no authority, however, for the proposition that failing to produce evidence of weather events on the *date of loss* necessitates granting summary judgment. Common sense, for one, dictates that such damage could be caused by earlier weather events.

Instead, the standard at summary judgment is whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, which requires the Court to draw any reasonable inferences from the evidence in the light most favorable to the nonmoving party, *Matsushita Elec. Indus.*, 475 U.S. at 587. Here, Plaintiff has put forth enough evidence to survive summary judgment.

For example, Plaintiff has produced evidence that hail fell during the policy period. Specifically, Plaintiff has put forth Mr. Clark's opinion, which relies on radar data, that

15

hail hit the property on June 27, 2017. (Clark Report at 8.) Similarly, Mr. Johnson relied on weather data showing that there were strong winds and 1-inch sized hail "near Worthington, on July 4, 2018." (Second Johnson Report ¶ 1.2.) And the Haag Report confirms that hail fell about 6.4 miles from the Worthington Hotel on July 4, 2018. (Haag Report at 4.) Notably, there also is a dispute about whether the date of loss recorded on the claim sheet represents the date the weather events occurred or reflects an agreed-to *reported* date of loss. (Brown Decl. ¶ 15.) On that issue, the contract offers no guidance because it does not define the phrase "date of loss."

Plaintiff has also put forth evidence that there were freeze-thaw conditions on the roof in Spring 2019, along with Mr. Johnson's opinion that such conditions "more likely than not" caused the roof damage. (Clark Report at 7–8; First Johnson Report ¶ 3.4.) This evidence creates a material factual dispute, especially since the evidence in the record shows that the roof did not leak prior to July of 2018. (Pooniwala Dep. 18:2–4, 20:1–3; *see also* Gagne Decl. Exs. 8–9.) Taken together, this is enough to establish a material factual dispute as to whether ice dams and hailstorms caused damage to the roof at the Worthington Hotel relating to these dates of loss.

Alternatively, Defendant contends that there is no coverage for the alleged hail damage in this case because of the "wear and tear" exclusion. (Def.'s Mem. at 28–29.) To be sure, RCL issued an opinion that the roof was "well past the end of its useful service of life" and that the damage resulted from wear and tear. (First RCL Report at 5; *see* Second RCL Report at 6.) However, Plaintiff has put forth Mr. Johnson's expert opinion to the contrary. (First Johnson Report ¶ 2.4.16 ("At issue here is that RCL considers wear and

16

tear is the only way water/snow/ice can damage a roof (i.e. by weight alone). I disagree."). Mr. Johnson opines that the roof damage is from "ice/snow/meltwater buildup that trapped itself on the roof starting on March to April 2019, and leading up to April 23, 2019." (*Id.* ¶ 3.2.) These competing opinions confirm a material factual dispute that precludes summary judgment.[2]

For these reasons, the Court finds that there are material factual disputes as it relates to the breach of contract claim that precludes the granting of summary judgment.

### 3. Unjust Enrichment

Defendant asserts that the unjust enrichment claim is precluded because the parties' relationship is governed by the Policy. (Def.'s Mem. at 30–31.) The Court agrees.

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *HomeStar Prop. Sols., LLC v. Safeguard Properties, LLC*, 370 F. Supp. 3d 1020, 1029 (D. Minn. 2019) (internal quotation marks omitted) (granting summary judgment on unjust enrichment claim because a written contract governed the relevant subject matter). An unjust enrichment claim is not available "when there is an enforceable contract that is applicable." *Id.* (internal quotation marks and citation omitted); *accord U.S. Fire Ins. Co.*

---

[2] Defendant also argues that the negligent work exclusion bars recovery as a matter of law. (Def.'s Mem. at 30.) The Court finds that Defendant has not met its burden in establishing that such an exclusion applies. *See Travelers Indem. Co.*, 718 N.W.2d at 894. Moreover, the Court finds that a material dispute of fact as to whether the negligent work exclusion applies, as the parties' experts dispute whether there were negligent repairs. (*Compare* First RCL Report at 4–5, *with* Johnson Decl. ¶¶ 15, 21–22, *and* First Johnson Report ¶¶ 1.2, 2.3.4, 2.4.3, 3.1–3.4.)

*v. Minn. State Zoological Bd.*, 307 N.W.2d 490, 497 (Minn. 1981) ("[E]quitable relief cannot be granted where the rights of the parties are governed by a valid contract."). Courts usually "bar unjust enrichment claims as a matter of law when there is no dispute that a written contract governs the at-issue conduct." *See, e.g.*, *City Ctr. Realty Partners, LLC v. Macy's Retail Holdings, Inc.*, Civ. No. 17-528 (SRN/TNL), 2017 WL 4081896, at *11 (D. Minn. Sept. 13, 2017) (dismissing unjust enrichment claim "as a matter of law" when "the facts that support[ed] City Center's breach of contract claim [were] the same facts that support its unjust enrichment claim," especially considering it "ha[d] not alleged or indicated why its legal remedy [was] inadequate"); *see also Ventura v. Kyle*, 825 F.3d 876, 887–88 (8th Cir. 2016) (dismissing unjust enrichment claim where an "adequate remedy at law" (i.e., a defamation claim) was available).

Here, because a written contract governs the relevant subject matter, and because Woodbury Lodging does not point to any facts distinguishing its unjust enrichment claim from its breach of contract claim, Woodbury Lodging's claim fails as a matter of law. *Accord City Ctr. Realty Partners*, 2017 WL 4081896, at *11 (dismissing unjust enrichment claim). Woodbury Lodging correctly notes that "[t]he Rules allow for pleading claims for relief in the alternative." (Pl.'s Opp'n [Doc. No. 27] at 31.) However, that rule does not apply when there is no doubt that a written contract applies. *See HomeStar Prop. Sols.*, 370 F. Supp. 3d at 1029–30. Accordingly, the Court grants Defendant's motion for summary judgment on the unjust enrichment claim.

### C. Jury Trial

A right to trial by jury may flow either from a statute or from the Seventh Amendment to the United States Constitution. Fed. R. Civ. P. 38(a). The Seventh Amendment preserves the right to trial by jury "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars." U.S. Const. amend. VII. "Suits at common law" are "suits in which legal rights are to be ascertained and determined, in contrast to those where equitable rights alone are recognized, and equitable remedies are administered." *Karsjens v. Jesson*, Civ. No. 11-3659 (DWF/JJK), 2014 WL 4446270, at *1 (D. Minn. Sept. 9, 2014) (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41 (1989)).

Determining whether a claim is legal or equitable requires a two-step analysis. *See Tull v. U.S.*, 481 U.S. 412, 417 (1987). First, courts "compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." *Id.* Second, courts "examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 417–18. "The Supreme Court has stressed the second inquiry of this test is the more important of the two." *Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968 (8th Cir. 2005). At common law, "suits for damages for breach of contract . . . were . . . to be decided by a jury." *Atlas Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n*, 430 U.S. 442, 459 (1977); *Fru-Con Const. Corp. v. Controlled Air, Inc.*, 574 F.3d 527, 536 (8th Cir. 2009) ("[T]he breach of contract claim is an action at law which may be presented to a jury.").

Here, Plaintiff's breach of contract claim is legal in nature, which means it carries a right to a trial by jury. Accordingly, the Court finds that Count II shall be submitted to the jury.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant Integrity Mutual Insurance's Motion for Summary Judgment and to Exclude Expert Testimony [Doc. No. 14] is granted in part and denied in part as follows:

    a. Defendant's Motion to Exclude the Expert Testimony of Steven Clark is **DENIED**;

    b. Defendant's Motion to Exclude the Expert Testimony of Brian Johnson is **DENIED**;

    c. Defendant's Motion for Summary Judgment is **DENIED** as to Count II;

    d. Defendant's Motion for Summary Judgment is **GRANTED** as to Count III;

2. Plaintiff has a right to a jury trial on Count II, which will be submitted to the jury; and

3. This matter is set for a jury trial before this Court on August 8, 2022. A separate trial notice will be forthcoming.


Dated: April 4, 2022

s/ Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Judge